UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Corey Glover, | ) | C/A No. 2:25-cv-13215-RMG-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| The Boeing Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on The Boeing Company's ("Boeing" or "Defendant") Partial Motion to Dismiss. ECF No. 6. Corey Glover ("Glover" or "Plaintiff") brings this action against Boeing alleging claims of race discrimination, retaliation, and a racially hostile work environment, all in violation of 42 U.S.C. § 1981. ECF No. 1 at 1. Plaintiff also asserts state law claims for breach of contract and breach of contract accompanied by fraudulent intent. *Id*. The pending Motion to Dismiss seeks dismissal of only the state law claims. ECF No. 6. Plaintiff's claims for race discrimination, retaliation, and a racially hostile work environment are not subject to this Moton or Order and would remain pending. Pursuant to 28 U.S.C. § 636(b) Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases involving claims of employment discrimination and submit findings and recommendations to the district court. For the reasons below, the Motion to Dismiss should be granted in part and denied in part.

**BACKGROUND**

Plaintiff commenced this action on October 30, 2025, by filing a Complaint making the following relevant allegations. ECF No. 1. Plaintiff is an African American male who was employed by Boeing as a mechanic for approximately sixteen years from February 2009 until his

1

involuntary termination via layoff in November 2024. *Id*. at 2. Plaintiff contends he entered employment with Boeing "based on express and implied terms set forth in Defendant's policies, Code of Conduct, and Ethical Business Conduct Guidelines, which formed part of the employment contract." *Id*. at 3. Plaintiff contends he "consistently demonstrated commitment, initiative, and performance, progressing into roles of increasing responsibility, taking part in the job-related trainings, obtaining various occupational certifications, and maintaining all required credentials." *Id*. In 2021, Plaintiff's then-manager, Josh Owens ("Owens"), a Caucasian male, selected Plaintiff to participate in a six-to-nine-month Standard Kit Optimization ("SKO") project focused on reducing company waste. *Id*. Around that same time, Plaintiff also took the initiative to schedule one-on-one job shadowing sessions with various supervisors at Boeing to further develop his skills and career trajectory. *Id*. Plaintiff sought mentorship from Brenda Chapman ("Chapman"), an African American female, who served as a hiring manager for Boeing. *Id*.

During Plaintiff's mentorship, Chapman "conveyed a racially charged remark, informing Plaintiff that, based on her discussions with other staff at Defendant, he was perceived by his Caucasian colleagues as 'intimidating' due to his appearance." *Id*. at 4. Chapman presented this as "a reflection of the sentiments expressed by others" and not her own view. *Id*. Plaintiff was instructed to lower his chair during meetings and avoid making eye contact with others, which Plaintiff contends was rooted in harmful racial stereotypes. *Id*.

In May 2022, Plaintiff was promoted to a Line Side Control Center ("LSCC") position at Boeing and was later encouraged to apply for a Workplace Coach position. *Id*. In late 2022, Plaintiff applied for an internally posted Workplace Coach position. *Id*. Boeing subsequently extended an offer to Plaintiff for the Workplace Coach position. *Id*. "Relying on the terms and classification presented in the original posting, Plaintiff accepted the offer and commenced

employment in February 2023." *Id*. Upon acceptance, Plaintiff was presented with a compensation package that was approximately $15,000 to $17,000 lower than the salary range associated with the Level 3 role that Plaintiff relied on in deciding to accept the position. *Id*. Plaintiff was informed that the role had been reclassified to a Level 2 position. *Id*. at 5. Notwithstanding the alleged reclassification, Plaintiff immediately assumed and performed the full scope of duties as outlined in the original Level 3 job description. *Id*. Weeks later, Boeing "retroactively altered the internal job posting to reflect the Level 2 classification and lower salary . . . [and] further deprived Plaintiff of the compensation and status he was led to believe he had earned." *Id*. Plaintiff raised concerns to Boeing's Human Resources Department and, in February 2023, Boeing adjusted Plaintiff's compensation to reflect the appropriate rate. *Id*.

From February 2023 through October 2023, Plaintiff engaged in regular monthly one-on-one meetings with his direct supervisor, Ryan Cass ("Cass"), a Caucasian male, who was a senior manager for Boeing, to review his progress and performance. *Id*. Plaintiff contends that "the meetings focused on Plaintiff's personal life, background, and goals—information that was later weaponized against Plaintiff as a form of intimidation and harassment based on Plaintiff's race." *Id*. at 6.

In March 2023, a member of the LSCC contacted Plaintiff about interviewing for a supervisor role. *Id*. However, Cass refused to allow Plaintiff to apply, stating "I'm not in the business of letting people jump from one organization to another organization." *Id*. Cass Blocked Plaintiff from advancing and, around the same time, a non-African American colleague was allowed to accept a new position under nearly identical circumstances. *Id*.

Beginning around April 2023, Plaintiff experienced targeted racial harassment on a weekly and daily basis from Cass. *Id*. Among other things, Cass publicly undermined Plaintiff, frequently

3

interrupting and belittling him while presenting to his peers while "such behavior was not directed toward any of his non-African American colleagues." *Id.*

In November 2023, Plaintiff received his end-of-year review from Boeing's first-line manager, Daniel Rasmussen ("Rasmussen"), a Caucasian male, who stated that Plaintiff needed improvement in areas such as project communication and task tracking, despite Plaintiff's employment record showing no prior document performance concerns. *Id.* at 7. In response, Plaintiff proactively began submitting detailed daily wrap-up reports outlining his work, completed tasks, individuals assisted, and follow-up items. *Id.* Nevertheless, in February 2024, Plaintiff was placed on a Performance Improvement Plan ("PIP") by Rasmussen and Cass. *Id.* the PIP was issued without any prior formal counseling, progressive discipline, or documented evidence of underperformance prior to or following the November 2023 review. *Id.* The PIP significantly impacted Plaintiff's eligibility for a raise and performance-based bonus and, according to Plaintiff, "reflected Defendant's discriminatory bias, and was consistent with Defendant's broader pattern of unequal treatment toward Plaintiff." *Id.* Boeing released Plaintiff from PIP in March 2024, "further displaying that Plaintiff had already met performance expectations" and supporting the conclusion that the action was discriminatory. *Id.*

In March 2024, Plaintiff formally initiated Boeing's Alternative Dispute Resolution ("ADR") process "to challenge the unjustified PIP and ongoing discrimination treatment." *Id.* Despite the ADR process, "Plaintiff endured a racially hostile work environment on a weekly basis from March through September 2024. *Id.* "During this time, persistent hostility created a tense and oppressive atmosphere that adversely affected Plaintiff's well-being and ability to perform his duties." *Id.* at 8. In August 2024, the ADR representative "expressed concern that there may be more extensive or systemic problems occurring 'behind the scenes'" and Plaintiff affirmed to the

representative that he believed he was being subjected to discriminatory treatment. *Id*. "Recognizing the seriousness of the situation, the ADR representative filed an ethics claim on Plaintiff's behalf . . . specifically citing concerns related to racial discrimination." *Id*.

Around the same time, Boeing's Workplace Coach, Mike Staziack ("Staziack"), a Caucasian male, approached Plaintiff "to acknowledge he had personally observed Plaintiff being treated differently than non-African American employees by their shard supervise, Mr. Crass." *Id*. Plaintiff contends that "Staziack recognized this differential treatment as unfair and subsequently reported the mistreatment to upper management, including Mr. Rasmussen." *Id*.

In September 2024, Boeing concluded its ethics investigation with no formal disciplinary action, "instead advising that Plaintiff's supervisor receive 'coaching' on leadership style." *Id*. at 9. Following the investigation, Plaintiff was repeatedly referred back and forth between Boeing's Human Resources and Employee Relations Departments, with neither department accepting responsibility for addressing or resolving Plaintiff's ongoing concerns, further delaying any meaningful action and prolonging his experience of discriminatory treatment. *Id*.

In November 2024, Boeing's Human Resources recommended that Plaintiff escalate his concerns by speaking directly with his supervisor's manager and Boeing's Director, Alan Terry ("Terry"), a Caucasian male. *Id*. Plaintiff met with Terry on November 12, 2024, to reiterate that his complaints had not been adequately addressed. *Id*. During the meeting, Terry express his support for the findings of the ethics review. *Id*. On November 13, 2024, Plaintiff filed a complaint with the South Carolina Human Affairs Commission ("SCDHAC"). *Id*. Later that same day, Plaintiff was informed of his layoff during a meeting with Rasmussen, Terry, and another Boeing employee. *Id*. According to Plaintiff, the "layoff occurred just hours after Plaintiff engaged in protected activity under Title VII by filing a formal discrimination complaint with the

5

[SCDHAC]." *Id*. Plaintiff alleges that, "[a]t the time of the layoff, Plaintiff's Caucasian counterparts, who held comparable roles and qualifications, were given the opportunity to transition into other positions within the Defendant company as an alternative to termination," but Plaintiff was not extended the same opportunity, despite being similarly situated. *Id*. at 10. Moreover, Plaintiff was the only individual in the Workplace Coach role who was selected for layoff, raising serious concerns of race-based discrimination and suggesting a deviation from the Boeing's standard layoff practices and internal policies. *Id*.

Based on these and other allegations, Plaintiff asserts four enumerated Causes of Action: (1) race discrimination; (2) racially hostile work environment; (3) retaliation; (4) breach of contract; and (5) breach of contract accompanied by fraudulent intent. *Id*. at 13–22.

On January 20, 2026, Boeing filed a Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). ECF No. 6. On February 10, 2026, Plaintiff filed a Response in Opposition. ECF No. 15. On February 17, 2026, Boeing filed a Reply. ECF No. 16. This matter is ripe for review.

## STANDARD OF REVIEW

**Federal Rule of Civil Procedure 12(b)(6)**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F.Supp.3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a "short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "In assessing the sufficiency of a complaint, [the court] assume[s] as true all its

well-pleaded facts and draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## ANALYSIS

Boeing filed a Motion to Dismiss under Rule 12(b)(6), seeking dismissal of Plaintiff's state law claims for breach of contract and breach of contract with fraudulent intent. ECF No. 6. Boeing argues that South Carolina law provides a presumption that employment is at-will, which can only be overcome by pointing to mandatory language in a company policy demonstrating the existence of a contract. ECF No. 6-1 at 2–3. Boeing argues that Plaintiff has failed to sufficiently plead the existence of any contract with Boeing beyond the parties' at-will employment relationship and that both of Plaintiff's state law claims fail as a result. *Id*. at 3.

**Breach of Contract**

Plaintiff alleges that a valid and enforceable contractual relationship existed between Plaintiff and Boeing, "arising from a combination of written agreements, internal policies, and representations made to Plaintiff throughout his employment," including (1) Plaintiff's offer letters and acceptance of employment into successive roles with increasing responsibility; (2) official job postings, HR communications, and pay classifications associated with each of Plaintiff's roles

throughout his employment; (3) company policies and procedures governing performance management, promotions, layoffs, internal grievances, and workplace conduct; (4) Boeing's Code of Conduct and Ethical Business Conduct Guidelines, which promised non-discriminatory treatment, non-harassment, transparency, non-retaliation, and equal opportunity in advancement; and (5) representations that concerns raised through Human Resources, the Ethics Office, and ADR would be reviewed in good faith and resolved through fair internal processes. ECF No. 1 at 19, ¶ 75. Plaintiff alleges that he fully performed his duties under the contract throughout his sixteen-year tenure. *Id*. at 19, ¶ 76. According to Plaintiff, Boeing materially breached the terms of the contractual relationship by (1) failing to compensate Plaintiff in accordance with the originally posted Level 3 Workplace Coach position; (2) retroactively altering the Workplace Coach job classification and salary range after Plaintiff accepted the position; (3) subjecting Plaintiff to an unjustified and procedurally improper PIP; (4) failing to follow its own stated layoff protocols; (5) refusing to consider Plaintiff for reassignment or reposition within the company; (6) failing to meaningfully process Plaintiff's grievances under internal Ethics, HR, and ADR systems; and (7) violating the express terms and spirit of the Boeing Code of Conduct and Ethical Business Conduct Guidelines. *Id*. at 20, at ¶ 77. Thus, Plaintiff's breach of contract claim arises from two sources— (1) Boeing's general policies and procedures (including its Code of Conduct, Ethical Business Conduct Guidelines, anti-discrimination procedures, and other similar documents), and (2) the Level 3 Workplace Coach position posting.

Boeing argues that Plaintiff's breach of contract claim should be dismissed because Plaintiff's Complaint fails to plausibly allege any specific policy language that contains promises or mandatory terms sufficient to create a contract and overcome the presumption of at-will employment. ECF No. 6-1 at 3–7. The Court agrees in part.

***Contract Formation and At-Will Employment***

South Carolina has long recognized the doctrine of employment at-will. *Prescott v. Farmers Telephone Co-op., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999); *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (S.C. 2010). At-will employment may be terminated by either party at any time, for any reason or for no reason at all. *Stiles v. Am. Gen. Life Ins. Co.*, 516 S.E.2d 449, 450 (S.C. 1999). However, "an employer and employee may choose to contractually alter the general rule of at-will [employment]." *Prescott*, 516 S.E.2d at 925. "Because employment is presumed to be at-will, in order to survive a motion to dismiss on a claim for breach of contract of employment, a plaintiff must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." *Hall v. Family YMCA of Greater August*, C/A No. 1:17-cv-00337-JMC, 2017 WL 3158776, at *3 (D.S.C. July 25, 2017) (citation and internal quotation marks omitted); *see also Brailsford v. Fresenius Med. Ctr. CNA Kidney Ctrs. LLC*, C/A No. 2:15-cv-4012- DCN, 2017 WL 1214337, at *5 (D.S.C. April 3, 2017) (same). For example, "[a]n employee handbook *may* create a contract altering an at-will arrangement." *Hall*, 2017 WL 3158776, at *4 (citations and internal quotation marks omitted) (emphasis in original) ("A handbook forms an employment contract when: (1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer."). Accordingly, the Court must determine whether the parties entered into a contractual agreement altering the presumptive at-will employment relationship. *Weaver v. John Lucas Tree Expert Co.*, C/A No. 2:13-cv-01698-PMD, 2013 WL 5587854, at *5 (D.S.C. Oct. 10, 2013).

A plaintiff alleging breach of contract must plead the existence of a valid contract, consisting of offer, acceptance and consideration. *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C.

1997). The employee plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." *Amason v. P.K. Mgmt., LLC*, C/A No. 3:10-cv-1752-JFA, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011). This requires pleading that the employee and employer entered into a contract "with terms of employment that limited the duration of the relationship or the right of termination or both." *Weaver*, 2013 WL 5587854, at *6. In some instances, an employer may alter the employee's at-will status through mandatory language in a handbook. *Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). To be considered mandatory language, the purported contract must be "definitive in nature, promising specific treatment in specific situations." *Anthony v. Atl. Grp., Inc.*, 909 F. Supp. 2d 455, 467 (D.S.C. 2012). It must not be "couched in permissive language" such as "normally" and "should." *Grant*, 634 S.E.2d at 21-22. The plaintiff "must direct the court to some particular provision he claims was violated that limited the employer's right to discharge him" and "the handbook promise must restrict the right of an employer to discharge." *Lawrence v. Westinghouse Savannah River Co., Inc.*, C/A No. 1:03-cv-0484-27, 2005 WL 36968031, at *4 (D.S.C. Mar. 31, 2005).

### *Boeing's Policies and Procedures*

Here, as to Plaintiff's references to Boeing's policies and procedures, Plaintiff fails to sufficiently plead facts showing the existence of any contract with Boeing beyond the parties' at-will employment relationship. Instead, Plaintiff has only alleged in general and conclusory terms that he entered into a contract with Boeing. Plaintiff makes references to Boeing's Code of Conduct, Ethical Business Conduct Guidelines, and "performance management procedures." ECF No. 1 at 19, ¶ 75. However, other than identifying these documents, Plaintiff does not allege facts showing these documents constitute a contract, and he does not point to any specific language in

10

any document showing that he had a contract of employment. *See, e.g., Smith v. Palmetto Denture Care, P.A.*, C/A No. 7:17-cv-1043-AMQ-KFM, 2018 WL 3611368, at *4 (D.S.C. July 27, 2018) ("*Smith II*") ("Plaintiff's Amended Complaint does not contain sufficiently specific allegations about the provisions of the Employee Handbook that are at issue in this case. . . . [Plaintiff's] allegations refer generally to the Employee Handbook and to topics in the Employee Handbook. But the allegations fail to specify the actual provisions of the Employee Handbook at issue and fail to specify how such provisions create mandatory obligations. . . . *Iqbal* and *Twombly* require more."); *Battle v. Nikanth, LLC*, C/A No. 2:13-543-PMD, 2013 WL 4874976, at *3 (D.S.C. Sept. 11, 2013) ("Here, a review of the allegations of the Complaint shows that Plaintiff has only alleged in very general and conclusory terms that she 'entered into a contract' of employment with Defendants and that the company had a handbook which used 'mandatory language creating a contractual agreement. . . . These allegations do not establish the existence of any employment contract . . . ."); *Nicholson v. Sci. Applications Int'l Corp.*, C/A No. 2:12-cv-2779-PMD-BM, 2012 WL 6568399, at *2 (D.S.C. Nov. 27, 2012) ("Plaintiff has only alleged in very general and conclusory terms that she 'entered into a contract' with the Defendant, executed various [unspecified] documents which constituted a contract of employment, and that the Defendant had an Employee Handbook which used 'mandatory language creating a contractual agreement.' Such general and conclusory allegations are not sufficient to establish the existence of an employment contract."). Plaintiff does not identify any specific policy or language therein sufficient to alter the at-will nature of his employment and, on its face, the Complaint simply fails to overcome the presumption of at-will employment by showing the existence of a contract under South Carolina law. *See Myrick v. Atkinson*, C/A No. 4:20-cv-139-FL, 2021 WL 4927977, at *6 (E.D.N.C. Oct. 21, 2021) (dismissing the plaintiff's allegation that "upon information and belief [the defendant]

11

enacted policies applicable to calculation of regular and overtime compensation for employees of . . . and thus entered into contracts with the [plaintiffs] to provide regular hourly pay and overtime pay in accordance with state law" as wholly conclusory and insufficient to state a claim for breach of contract).

Further, to the extent Plaintiff relies on anti-retaliation provisions in Boeing's policies and procedures to show the existence of a contract, courts in this District have consistently held that such provisions are insufficient to form an employment contract. *See, e.g., Smith v. Palmetto Denture Care, P.A.*, C/A No. 7:17-cv-1043-DCC-KFM, 2018 WL 10374493, at *3 (D.S.C. Feb. 28, 2018) ("*Smith I*") ("[C]ourts have found that typical anti-discrimination and anti-retaliation policies found in most employee handbooks are insufficient to form a contract of employment.") (collecting cases); *Brailsford*, 2015 WL 4459032, at *4 ("[T]o the extent Brailsford's amended complaint relies on anti-retaliation policies, courts have found such language to be insufficient to form a contract of employment.") (collecting cases); *Washington v. Boeing Co., Inc.*, C/A No. 2:20-cv-1144-RMG, 2021 WL 129261, at *3 (D.S.C. Jan. 14, 2021) (dismissing breach of contract claim against Boeing and noting "the portions of the policies that Plaintiff contends are mandatory and promissory terms are instead standard anti-discrimination and non-retaliation provisions that are insufficient to overcome the presumption of at-will employment"). Indeed, cases in this District consistently have been dismissed which assert breach of contract claims against Boeing predicated on the same anti-discrimination, anti-harassment, and anti-retaliation policies that Plaintiff invokes here. *See, e.g.*, *Washington*, 2021 WL 129261, at *3; *Alston v. Boeing Co., Inc.*, C/A No. 2:19-cv-2713-RMG, 2021 WL 5772803, at *3 (D.S.C. Jan. 25, 2021) (granting Boeing's motion to dismiss because "the portions that Plaintiff contends are mandatory and promissory terms are rather standard anti-discrimination and non-retaliation provisions that are insufficient to overcome the

presumption of at-will employment"); *Bennett v. Boeing Co., Inc.*, C/A No. 2:20-cv-1143-RMG, 2021 WL 129262, at *4 (D.S.C. Jan. 14, 2021) (same); *Austin v. Boeing Co., Inc.*, C/A No. 2:20-cv-1142-RMG, 2021 WL 129257, at *3 (D.S.C. Jan. 14, 2021) (same); *Baker v. Boeing Co., Inc.*, C/A No. 2:18-cv-2574-RMG, 2020 WL 5652129, at *2 (D.S.C. Sept. 23, 2020) (dismissing the plaintiff's breach of contract claims based on alleged provisions of Boeing's internal retaliation policy, reassignment policy, reasonable accommodation policy, anti-discrimination policy and progressive discipline policy). Plaintiff has not presented allegations that are meaningfully different from allegations made in these prior cases such that the Court can find the existence of a contract based on the same policy provisions.

Accordingly, Plaintiff's breach of contract claim should be dismissed to the extent that the claim is premised on references to Boeing's policies and procedures, including Boeing's Code of Conduct, Ethical Business Conduct Guidelines, performance management procedures, anti-discrimination polices, and other similar documents referenced in the Complaint. Accepting Plaintiff's allegations as true and construing all inferences in his favor, Plaintiff's Complaint does not contain sufficient facts to overcome the at-will employment presumption and therefore fails to state a claim for breach of contract as to Boeing's policies and procedures. *See West v. AGY Holding Corp.*, C/A No. 1:24-cv-3839-JDA-WSB, 2025 WL 2480688, at *3–5 (D.S.C. Apr. 24, 2025), *R&R adopted by* 2025 WL 2611909 (D.S.C. Sept. 10, 2025).

### *The Level 3 Workplace Coach Position*

Nevertheless, at this stage, construing the allegations in the light most favorable to Plaintiff and considering all reasonable references drawn therefrom, the Court finds that Plaintiff has plausibly alleged a claim for breach of contract premised on his acceptance of the Level 3 Workplace Coach position. Plaintiff alleges that he was offered a Level 3 Workplace Coach

position but Boeing "[f]ailed to compensate Plaintiff in accordance with the originally posted Level 3 Workplace Coach position" and "[r]etroactively alter[ed] the Workplace Coach job classification and salary range after Plaintiff accepted the position." ECF No. 1 at 20, ¶ 77. According to Plaintiff, Boeing internally posted a Workplace Coach position, "which was explicitly classified as a Level 3 role, with a corresponding salary range reflective of that classification." *Id*. at 4, ¶ 14. In late 2022, Plaintiff submitted his application "in reasonable reliance on the job's Level 3 designation and its associated compensation." *Id*. Plaintiff alleges that Boeing subsequently extended an offer to Plaintiff for the Workplace Coach position and "[a]t no time prior to acceptance did Defendant inform Plaintiff that the position had been or would be downgraded in pay grade or classification." *Id*. at 4, ¶ 15. According to the Complaint, "[r]elying on the terms and classification presented in the original posting, Plaintiff accepted the offer and commenced employment in February 2023" and "Defendant was aware that Plaintiff relied on the original Level 3 designation in deciding to accept the promotion." *Id*. at 4, ¶ 16. Plaintiff asserts that he "immediately assumed and performed the full scope of duties as outlined in the original Level 3 job description." *Id*. at 5, ¶ 18. Despite Plaintiff's acceptance of the offer and consummating the role of the Level 3 position, "Defendant subsequently and retroactively altered the internal job posting to reflect the Level 2 classification and lower salary." *Id*. at 5, ¶ 19. Plaintiff contends that Boeing breached its contract by failing to compensate Plaintiff in accordance with the originally posted Level 3 Workplace Coach position. *Id*. at 20, ¶ 77(a).

These allegations plausibly show the establishment of a contract between Plaintiff and Boeing and allege that Boeing breached that contract. Plaintiff alleges that Boeing offered a Level 3 position, which Plaintiff accepted, relying on the posted compensation. Plaintiff alleges that he

14

performed the duties of the Level 3 position, but Boeing failed to pay him at the promised compensation level.

Boeing argues that Plaintiff fails to allege facts establishing a contract because he has not shown that he and Boeing entered into "'mandatory and binding terms for his employment such as a definite term of employment, buyout provisions, right to severance pay, and other such indices of a contract of employment.'" ECF No. 6-1 at 6 (quoting *Oroujian v. Delfin Group USA LLC*, 57 F. Supp. 3d 544, 558 (D.S.C. Oct. 29, 2014)). *Oroujian* is distinguishable because in that case the plaintiff argued an employee handbook created a contract, but the court concluded that, in reviewing the language of the handbook cited by the plaintiff, there were no mandatory and binding terms establishing an employment contract. Here, Plaintiff is not relying on the general terms of an employee handbook or other similar document. Instead, Plaintiff has identified a specific offer of employment for a position with discrete terms, duties, and associated compensation. Although Plaintiff does not specifically quote any mandatory and binding terms contained within the offer, his allegations are sufficient to show that the advertised position included such terms to establish a contract and, upon his acceptance, there was a meeting of the minds.

Boeing also argues that Plaintiff cannot establish a breach of contract because Boeing can unilaterally change the rate of pay, even assuming that the Level 3 position created a contract for employment of some indefinite term. ECF No. 6-1 at 7. Boeing relies on *Wadford v. Hartford Fire Ins. Co.*, C/A No. 3:87-cv-2872-15, 1988 WL 492127, at *4 (D.S.C. Aug. 11, 1988), for the proposition that "terms and conditions of employment, including pay, benefits, job duties, or

15

location of performance may be changed *prospectively* by either party without violating an employment contract with an indefinite term." *Id*. (quoting *Wadford*, 1988 WL 492127, at *4).[1]

In *Wadford*, the court considered whether, under South Carolina law, an "employer is free to make *prospective* changes in the wages, benefits, and policies that constitute its offer to the employee for services the employee will perform in the future." *Wadford*, 1988 WL 492127, at *4. The court evaluated the South Carolina Supreme Court's decision in *Facelli v. Southeast Marketing Company*, 327 S.E.2d 338 (S.C. 1985), and explained as follows:

> The South Carolina Supreme Court's decision in *Facelli* recognized an employer's ability to make prospective changes to conditions of employment when an employee was employed for an indefinite period. In that case, the employee was hired for an indefinite term and promised a certain sales commission on his gross sales. At a later time, the employer informed the employee that his commission was going to be reduced. The court held that the employee could not recover for the reduction in his commission structure following the date he was informed of the reduction because, at that time, his only options were to accept the reduction or resign his employment. The court held, "If this change did not suit [plaintiff], [he] had every right to seek employment elsewhere." 284 S.C. at 451, 327 S.E.2d at 339.
>
> Naturally, if an employer promises an employee ten dollars an hour for services to be rendered, the employer cannot accept the employee's services and retroactively change the employee's rate of pay to eight dollars an hour for services already rendered. In such a case, the employee has an enforceable right to the promised rate of pay because he has already performed, thereby accepting the offer. In a contract for an indefinite term, however, the employer is always free to inform the employee that the hourly rate will be reduced for future performance because, in so doing, he is simply changing the offer before it has been accepted by the employee's performance. In a unilateral contract for an indefinite term, each party has the right to change the terms of the contract with respect to future performance at any time. If the other party does not agree to the proposed alterations in the term of the contract, their only alternative is to terminate the contract.

---

[1] The Court notes that *Wadford* was decided on summary judgment and employed a different standard than what the Court must apply here under Rule 12(b)(6).

*Id*. at * 5. Boeing's reliance on *Wadford* is misplaced to the extent it argues it could change Plaintiff's compensation at any time without constituting a breach of contract. *Wadford* makes clear that, assuming a contract exists for an indefinite term, an employer may alter pay compensation prospectively. But *Wadford* also makes clear that an employer may not alter compensation retroactively. Boeing may be correct that it can unilaterally change the compensation for the Level 3 position at any time for prospective pay within that position (although that issue is not presently before the Court). The problem with Boeing's argument is that Plaintiff has alleged facts stating Boeing promised one level of compensation to him, that Plaintiff "accepted the offer and commenced employment," and then Boeing failed to pay him at that level for performance of his duties under the Level 3 position, despite the promised compensation for that level. To be sure, it is unclear from the allegations in the Complaint for how long Plaintiff worked at the lower level of compensation before Plaintiff was informed that he would not receive the advertised compensation in the original Level 3 job posting. But, at a minimum, the Complaint alleges that Plaintiff was promised one rate of pay, he accepted the offer and began performing the duties of the position, and he was subsequently paid below the promised rate of pay for some period of time.

Boeing also argues that Plaintiff admits that Boeing "adjusted [his] compensation to reflect the appropriate rate in February 2023, approximately one month later." ECF No. 6-1 at 6 (citing Plaintiff's Complaint, ECF No. 1 at 5, ¶ 21). Thus, Boeing contends, Plaintiff cannot establish a breach as he cannot show any damages resulting from the alleged breach. However, even though Boeing corrected Plaintiff's compensation rate "approximately one month later," the Complaint plausibly alleges that Plaintiff sustained damages for some period of time when he was compensated under the incorrect rate. At this stage, accepting the allegations in the Complaint as

17

true and viewing them in Plaintiff's favor, the Court finds that Plaintiff has established at least some damages as a result of Boeing's alleged breach.

Accordingly, Boeing's Motion to Dismiss as to Plaintiff's breach of contract claim related to the Level 3 Workplace Coach position should be denied.

**Breach of Contract with Fraudulent Intent**

Plaintiff alleges that, despite entering into binding and enforceable contractual obligations with Plaintiff, Defendant materially breached its obligations and did so with fraudulent intent by knowingly misrepresenting or concealing material facts, including (1) advertising and offering the Workplace Coach role as a Level 3 position then covertly reclassifying it to Level 2; (2) failing to disclose the reclassification and lower salary prior to Plaintiff's acceptance and later retroactively altering the job posting to conceal the change; (3) repeatedly assuring Plaintiff during one-on-one meetings that his performance met expectations, while underhandedly compiling a false record of underperformance to justify a pretextual PIP and termination; (4) misrepresenting the basis for Plaintiff's layoff; and (5) permitting defamatory rumors to circulate internally, without investigation, warning or any factual basis.  ECF No. 21–22, ¶¶ 80–83.

Under South Carolina law, to plead a claim for breach of contract with fraudulent intent, a plaintiff must allege "(1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Harper v. Ethridge*, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986); *see also Williams v. Intier Auto. Interiors of Am., Inc.*, C/A No. 7:09-cv-01144-JMC, 2011 WL 588216, at *2 (D.S.C. Feb. 10, 2011).  "A breach of contract is an essential element of a claim for breach of contract with fraudulent intent." *Nelson-Rivers v. Berkeley Elec. Coop. Bd.*, C/A No. 2:25-cv-02609-BHH-WSB, 2025 WL 4640636, at *4 (D.S.C. Dec. 8, 2025), *R&R adopted by* 2026 WL 497022 (D.S.C. Feb. 20, 2026).

18

"[I]t is axiomatic that when a plaintiff 'fails to state a claim for breach of contract, she fails to state a claim for breach of contract accompanied by a fraudulent act.'" *Clark v. AGY Holdings Corp.*, C/A No. 1:24-cv-7032-SAL-KDW, 2025 WL 2324670, at *6 (D.S.C. June 3, 2025), *R&R adopted by* 2025 WL 1949169 (D.S.C. July 16, 2025). "The fraudulent act is any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design." *Harper*, 348 S.E.2d at 378. "The fraudulent act must be separate and distinct from the acts constituting breach, must accompany the breach, and must not be too remote in either time or character." *Lowes Foods, LLC v. Burroughs & Chapin Co.*, C.A. 4:16-cv-00354-RBH, 2019 WL 331179 *6 (D.S.C. Jan. 25, 2019) (citing *Smith v. Canal Ins. Co.*, 269 S.E.2d 348, 350 (S.C. 1980)).

### *Boeing's Policies and Procedures*

The Court has already addressed Plaintiff's arguments regarding the existence of a contract and breach thereof with respect to Boeing's policies and procedures. Because Plaintiff has failed to plead sufficient factual allegations to establish the existence of an employment contract as to Plaintiff's claim arising from Boeing's policies and procedures, Plaintiff's claim for breach of contract with fraudulent intent must also be dismissed as to those claims. *See Smith II*, 2018 WL 3611368, at *5 (noting that the defect in a plaintiff's breach of contract claim was "fatal to [her] breach of contract with fraudulent intent claim."); *Brailsford*, 2015 WL 4459032, at *5 (dismissing a claim for breach of contract accompanied by a fraudulent act where the plaintiff's breach of contract claim failed).

### *The Level 3 Workplace Coach Position*

As to Plaintiff's claim related to the Level 3 Workplace Coach position, the Complaint Plausibly alleges a breach of contract claim. Plaintiff alleges that, after he accepted the Level 3 position, Boeing "retroactively altered the internal job posting to reflect the Level 2 classification

and lower salary, effectively concealing the material change in terms and misrepresenting the nature of the role." ECF No. 1 at 5, ¶ 19.  This retroactive alteration of the job posting asserts facts to support an act that is separate from the alleged breach but accompanying it and allegedly an unfair or dishonest act.  Plaintiff also asserts that Boeing's actions were "an intentional act designed to induce Plaintiff into accepting the position under false pretenses."  *Id*. at 5, ¶ 20.  These allegations are sufficient to plausibly allege each element of a claim for breach of contract with fraudulent intent that is sufficient to survive dismissal under Rule 12(b)(6).

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the district court **GRANT in part and DENY in part** Boeing's Motion to Dismiss (ECF No. 6).  Boeing's Motion should be denied as to Plaintiff's claims related to the Level 3 Workplace Coach position.  All other claims for breach of contract and breach of contract with fraudulent intent should be dismissed.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

June 1, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

20

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).